LOHIER, Circuit Judge, concurring:
In response to the Court's careful textual analysis of § 1158(a)(2)(D), my colleague in dissent asks, "Why would Congress do that?" Dissent Op. at 39. We could just as easily ask, why not? No rule of interpretation makes congressional mercy an oxymoron. Nor is there a canon that permits us to ignore the plain language of an immigration statute like § 1158(a)(2)(D) just because those words happen to favor noncitizens.
The Government and the dissent suggest that relying on the usual or literal meaning of the text of § 1158(a)(2)(D) leads to a result at odds with the "obvious purpose" of Congress. Dissent Op. at 38, 39. They in effect resort to the canon of absurdity, without using the word. Yet we reserve that rarest of canons for the truly absurd, that is, "where the result of applying the plain language would be, in a genuine sense, absurd, i.e., where it is quite impossible that Congress could have intended the result and where the alleged absurdity is so clear as to be obvious to most anyone." Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA, 846 F.3d 492, 517 (2d Cir. 2017) (quotation marks omitted). As the Court explains, the result in this case is not even close to "absurd." It gives petitioners who are already eligible to be protected from removal on one claim an opportunity to have another claim heard. In fact, there is no case I can think of where applying the Court's interpretation of § 1158(a)(2)(D) would allow a petitioner who is substantively ineligible for asylum to remain in this country. This case, where Yang can remain in the United States on her credible claim of a forced abortion in China, illustrates the point.
The dissent offers yet another reason to avoid the plain language of § 1158(a)(2)(D), divining ambiguity where there is none to justify its turn to legislative history. After acknowledging that the Court's interpretation of the text is plausible, Dissent Op. at 35, the dissent asserts that Congress "has given [the word `application'] a broad, ordinary meaning: an application is a `request,'" Dissent Op. at 36. Defining "application" to mean "request," the dissent contends, supports an alternative plausible interpretation. Namely, substituting the term "request" for the term "application" in § 1158(a)(2)(D) "makes § 1158(a)(2)(D) claim-specific." Dissent Op. at 36.
But the idea that Congress intended "application" to mean "request" in § 1158 rests on an interpretive flaw, ignores the actual statutory use of both terms, and upends our long-held view that "[a]s a general matter, the use of different words within the same statutory context strongly suggests that different meanings were intended." United States v. Maria, 186 F.3d 65, 71 (2d Cir. 1999). Section 1158(a)(2)(D) appears in Chapter 12 of the INA. Nothing in that chapter supports the conclusion that Congress meant to define the word *41 "application" to mean "request." To the contrary, the relevant sections of Chapter 12 ascribe decidedly different meanings, not the same meaning, to the two words. Start with the fact that the same sections of Chapter 12 often use the terms "application" and "request" together. This alone signals that Congress did not attach the same meaning to both words. See Maria, 186 F.3d at 71. It is true that one section in Chapter 12 appears on the surface to use "request" and "application" interchangeably. Compare § 1188(a)(2), with § 1188(e)(2). But that provision involves issues that are far afield from Yang's case. By contrast, all of the other, relevant sections of Chapter 12 that contain both terms employ them differently. In these sections, "application" refers to a formal submission by the noncitizen to the government for a substantive statutory benefit, such as asylum or naturalization, while "request" refers to a procedural right, such as a hearing, provided by either the government or a court. See, e.g., § 1229c (referring to a noncitizen's application for voluntary departure and a noncitizen's request for a court order of voluntary departure); § 1446 (referring to a noncitizen's application for naturalization and her right to request that her application be transferred to another district if she relocates); § 1447 (referring to a noncitizen's application for naturalization and her right to request a hearing if it is denied). An "application" may subsume a request (or multiple requests); but the terms are not equivalent. Cf. § 1182(n)(1), (2) (referring to employer-filed application to the Secretary of Labor).
Of course, the Court's interpretation of § 1158(a)(2)(D) would persevere even if one were to read "application" and "request" to mean the same thing. I agree entirely with the Court, therefore, that rewriting § 1158(a)(2)(D) to refer to a "request" rather than an "application" would not make the provision claim-specific. A "request" for a specific thing, like an "application" for a specific thing, may have more than one underlying basis. If in a criminal case you "request" a hearing to dismiss the indictment against you, the request can cover a variety of different grounds: Fifth or Sixth Amendment, say, as well as an alleged statutory violation, and so on. The Court correctly points out that, in the same way, Yang may have made one "request" for asylum on multiple bases.
So whether the terms "request" and "application" mean very slightly different things or the same thing, that would not lead to two different plausible interpretations of the clear text in this case.